Filed 08/30/10　　　　Case 10-40352　　　　Doc 13

FILED
August 30, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002890545

**6**

Timothy J. Silverman, Esq. [SBN 145264]
SOLOMON, GRINDLE, SILVERMAN & WINTRINGER
A Professional Corporation
12651 High Bluff Drive, Suite 300
San Diego, California 92130
Telephone: (858) 793-8500
Facsimile: (858) 793-8263

Attorneys for Secured Creditor/Moving Party

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>TITAN GILROY and GINA GILROY,<br><br>Debtors.<br>_____<br>MEDALLION BANK c/o SYSTEMS & SERVICES TECHNOLOGIES, INC., ITS ASSIGNEES AND/OR SUCCESSORS IN INTEREST,<br><br>　　　　　　Movant,<br>-vs-<br>TITAN GILROY; GINA GILROY; MICHAEL F. BURKART, Chapter 7 Trustee,<br><br>　　　　　　Respondents. | Case No: 10-40352<br><br>D.C. No. TJS-1<br><br>Chapter 7<br><br>**EXHIBITS 1 - 3 IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY**<br><br>Date:　October 4, 2010<br>Time:　9:00 a.m.<br>Crtrm:　28<br><br>*The Courtroom of the Honorable Michael S. McManus* |

　　　Exhibit No. 1 - Retail Installment Contract and Security Agreement, pages 2 - 3;

　　　Exhibit No. 2 - Certificates of Title, pages 4- 5;

　　　Exhibit No. 3 - N.A.D.A. Guide valuation, page 6.

///

///

///

///

//

///

| RETAIL INSTALLMENT CONTRACT SECURITY AGREEMENT (Check if Sale is Secured) | Seller<br>COPE & MCPHETRES, INC.<br>4409 GRANITE DR<br>ROCKLIN, CA 95677 | Buyer<br>GILROY, TITAN<br>12897 AUSTIN FOREST CIRCLE<br>AUBURN, CA 95602 |
|---|---|---|
| No<br>Date 4/18/2008 | "We" and "us" mean the Seller above, its successors and assigns | "You" and "your" mean each Buyer above, and guarantor, jointly and individually |

**SALE:** You agree to purchase from us, on a time basis, subject to the terms and conditions of this contract and security agreement (Contract), the goods (Goods) and services described below. The Goods are sold in their present condition, together with the usual accessories and attachments.

| Description of Goods or Services Purchased | Serial or Unit No | Motor or Cabinet No | Price of Each Unit |
|---|---|---|---|
| New 08 MASTERCRFT X-15 SLDR | MBCNMEF41708 | 144299 | 55,670.40 |
| New 08 SPORT BOAT X-15 | 4FBBC212581018589 | | 5,900.00 |

Description of Other Collateral
(Not household goods)

**SECURITY:** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Goods purchased and any other collateral described above, and all accessions, attachments, accessories, and equipment placed in or on the Goods or other collateral, together called Property, and proceeds of the Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract

**PROMISE TO PAY AND PAYMENT TERMS:** You promise to pay us the principal amount of $ __40,000.00__, plus finance charges accruing on the unpaid balance at the rate of __18.950__% per year from today's date until paid in full. Finance charges accrue on a __365__ day basis. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the TRUTH IN LENDING DISCLOSURES. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

☐ **MINIMUM FINANCE CHARGE:** You agree to pay a minimum finance charge of $ __N/A__ if you pay this Contract in full before we have earned that much in finance charges.

**DOWN PAYMENT:** You also agree to pay, or apply to the Cash Price, on or before today's date, any cash, rebate and net trade-in value described in the ITEMIZATION OF AMOUNT FINANCED. ☐ You agree to make deferred payments as part of the cash down payment as reflected in your Payment Schedule.

**TRADE-IN:** The property traded in is _____

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost you | AMOUNT FINANCED<br>The amount of credit provided to you or on your behalf | TOTAL OF PAYMENTS<br>The amount you will have paid when you have made all scheduled payments | TOTAL SALE PRICE<br>The total cost of your purchase on credit, including your down payment of $ 26,232.23 |
|---|---|---|---|---|
| 18.950 % | $ 49,445.60 | $ 40,000.00 | $ 89,445.60 | $ 115,677.83 |

**Payment Schedule:** Your payment schedule will be

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 120 | 745.38 | MONTHLY STARTING 5/18/2008 |

**Security:** You are giving a security interest in
☒ the Goods purchased
☐ (description of other property)

**Late Charge:** If a payment is more than __15__ days late, you will be charged __$15.00__

**Prepayment:** If you pay off this Contract early, you ☐ may ☒ will not have to pay a Minimum Finance Charge
**Contract Provisions:** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

**CREDIT INSURANCE:** Credit life, credit disability (accident and health), and any other insurance coverage quoted below, are not required to obtain credit and we will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below ONLY the coverages you have chosen to purchase.

Credit Life: Insured _____
☒ Single ☐ Joint Premium $ __N/A__ Term _____
Credit Disability: Insured _____
☐ Single ☐ Joint Premium $ __N/A__ Term _____

Your signature below means you want (only) the insurance coverage(s) quoted above. If none are quoted, you have declined any coverages we offered.

_____ _____ _____ _____
Buyer d/o/b Buyer d/o/b

**PROPERTY INSURANCE:** You must insure the Property securing this Contract. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The deductible amount of this insurance may not exceed $ __N/A__
If you get insurance from or through us you will pay $ __N/A__ for _____ of coverage
This premium is calculated as follows
☐ Fire-Theft and Combined Additional Coverage $ __N/A__
☐ _____ $ __N/A__
☐ _____ $ __N/A__

☐ **SERVICE CONTRACT:** With your purchase of the Goods, you agree to purchase a Service Contract to cover _____
_____ _____ This Service
Contract will be in effect for _____

**ASSIGNMENT:** This Contract and Security Agreement is assigned to __MEDALLION BANK__.
The Assignee, phone __866-688-6983__. This assignment is made ☐ under the terms of a separate agreement ☒ under the terms of the ASSIGNMENT BY SELLER on page 2 ☐ This assignment is made with recourse
Seller By _____ Date __4/18/2008__

### ITEMIZATION OF THE AMOUNT FINANCED

Goods and/or Services Price
(not including taxes) $ __61,570.40__
Service Contract (not including taxes)
paid to _____ $ __N/A__
Taxes on the above goods and services $ __4,471.83__
Amount to Finance negative equity on trade in $ __N/A__
1. **Total Cash Price** (total of the above) $ __66,042.23__
Paid to Public Officials - Filing Fees Only $ __110.00__
Paid to Public Officials - Other than Filing Fees $ __73.00__
Insurance Premiums* $ __N/A__
Paid to __CA TIRE FEE__ $ __7.00__
 $ __N/A__
2. **Subtotal** (line 1 plus official fees and insurance) $ __66,232.23__
Trade-In Allowance $ __N/A__
Less Amount Owing
To _____ $ _____
3. Net Trade-In $ __N/A__
4. Deferred Down Payment $ __N/A__
5. Manufacturer's Rebate $ __N/A__
6. Cash Down Payment $ __26,232.23__
7. **Total Down Payment** (lines 3, 4, 5, and 6) $ __26,232.23__
 (disclose as $0 if negative)
8. Unpaid Balance (line 2 minus line 7) $ __40,000.00__
9. Prepaid Finance Charges $ __N/A__
10. **Amount Financed** (line 8 minus line 9) $ __40,000.00__
*We may retain or receive a portion of this amount.

**NOTICE TO BUYER:**
(1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled-in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you desire to pay off in advance the full amount due, the amount which is outstanding will be furnished upon request.

**BY SIGNING BELOW BUYER AGREES TO THE TERMS ON PAGES 1 AND 2 OF THIS CONTRACT AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS CONTRACT.**

Buyer _____ 4/18/2008
Signature Date

Signature _____ Date

(page 1 of 2)

CALIFORNIA RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT
ExpXcore © 1995, 1998 Bankers Systems, Inc. St. Cloud, MN Form RS-61-CA CA 12/28/2000 GOODS AND SERVICES - NOT FOR HOME IMPROVEMENT OR MANUFACTURED HOMES

EXHIBIT 1

2

## ADDITIONAL TERMS OF THIS CONTRACT AND SECURITY AGREEMENT

**GENERAL TERMS:** You have been given the opportunity to purchase the Goods and described services for the Cash Price or the Total Sale Price. The Total Sale Price is the total price of the Goods and any services if you buy them over time. You agreed to purchase the items over time. The Total Sale Price shown in the TRUTH IN LENDING DISCLOSURES assumes that all payments will be made as scheduled. The actual amount you will pay may be more or less depending on your payment record.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee, that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that is contrary to this provision, we will, instead, apply it first to reduce the principal balance, and when the principal has been paid in full, refund it to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract.

**PREPAYMENT:** You may prepay this Contract in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until you pay in full.

A refund of any prepaid, unearned insurance premiums may be obtained from us or from the insurance company named in your policy or certificate of insurance.

**OWNERSHIP AND DUTIES TOWARD PROPERTY:** By giving us a security interest in the Property, you represent and agree to the following:
- A. Our security interest will not extend to consumer goods unless you acquire rights to them within 10 days after we enter into this Contract, or they are installed in or affixed to the Goods.
- B. You will defend our interests in the Property against claims made by anyone else. You will do whatever is necessary to keep our claim to the Property ahead of the claim of anyone else.
- C. The security interest you are giving us in the Property comes ahead of the claim of any other of your general or secured creditors. You agree to sign any additional documents or provide us with any additional information we may require to keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
- D. You will keep the Property in your possession in good condition and repair. You will use the Property for its intended and lawful purposes. Unless otherwise agreed in writing, the Property will be located at your address listed on page 1 of this Contract.
- E. You will not attempt to sell the Property (unless it is properly identified inventory) or otherwise transfer any rights in the Property to anyone else, without our prior written consent. You will not permit the Property to become attached to any real estate without first providing us an opportunity to preserve our first priority status.
- F. You will pay all taxes and assessments on the Property as they become due.
- G. You will notify us of any loss or damage to the Property. You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**DEFAULT:** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):
- A. You fail to perform any obligation that you have undertaken in this Contract (which includes doing something you have agreed not to do).
- B. You become a debtor in any bankruptcy proceeding, or others take legal action to collect money or repossess property from you.

If you default, you agree to pay our costs for collecting amounts owing, including, without limitation, court costs, attorneys' fees, and fees for repossession, repair, storage and sale of the Property securing this Contract.

You also agree to pay our actual and reasonable costs of collection occasioned by removal of the goods from the state without our written permission, your failure to notify us of any change of residence, or your failure to communicate with us for a period of 45 days after any default in making payments due under this Contract.

If an event of default occurs as to any one of you, we may exercise our remedies against any or all of you.

**REMEDIES:** If you are in default on this Contract, we have all of the remedies provided by law and this Contract.
- A. We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.
- B. We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. Any amount we pay will be added to the amount you owe us and will be due immediately. This amount will earn finance charges from the date paid at the rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.
- C. We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
- D. We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises. We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward your obligations.
- E. We may, instead of repossessing the goods, pursue a judgment against you for the amount due under this Contract.

Except to the extent limited by law, by choosing any one or more of these remedies, we do not waive our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

In the event we repossess the goods, we must give you notice of your right to redeem, and notice of either a public sale of the goods or of our intention to keep the goods, as the case may be. Notice will be in a manner prescribed by Cal Civ Code § 1812.2 et seq.

You agree that, subject to your right to recover such property, we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above.

If you have purchased credit disability insurance in connection with this Contract, the following claim procedures apply.

### CLAIM PROCEDURE

If you become disabled, tell us (your creditor) right away. (We advise you to send this information to the same address to which you are normally required to send your payments, unless a different address or telephone number is given to you in writing by us at the location where we would like to be notified.) We will tell you where to get claim forms. Send in the completed form to the insurance company as soon as possible and tell us as soon as you do.

If your disability insurance covers all of your missed payments, **WE CANNOT TRY TO COLLECT WHAT YOU OWE OR FORECLOSE UPON OR REPOSSESS ANY COLLATERAL UNTIL THREE CALENDAR MONTHS AFTER** your first missed payment is due or until the insurance company pays or rejects your claim, whichever comes first. We can, however, try to collect, foreclose, or repossess if you have money due and owing us or are otherwise in default when your disability claim is made or if a senior mortgage or lien holder is foreclosing.

If the insurance company pays the claim within three calendar months, we must accept the money as though you paid on time. If the insurance company rejects the claim within three calendar months or accepts the claim within the three calendar months as a partial disability and pays less than for a total disability, you will have 35 days from the date that the rejection or the acceptance of the partial disability claim is sent to pay past due payments, or the difference between past due payments and what the insurance company pays for the partial disability, plus late charges. You can contact us, and we will tell you how much you owe. After that time, we can take action to collect or foreclose or repossess any collateral you may have given.

If the insurance company accepts your claim but requires that you send in additional forms to remain eligible for continued payments, you should send these completed additional forms no later than required. If you do not send in these forms on time, the insurance company may stop paying, and we will then be able to take action to collect or foreclose or repossess any collateral you may have given.

**RETURNED CHECK CHARGE:** If you make any payment required by this Contract with a check or negotiable order of withdrawal or share draft that is returned dishonored, we may charge and collect a fee of not more than $15.00 for such an item.

**INSURANCE:** You agree to buy property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the PROPERTY INSURANCE section, or as we will otherwise require. You will name us as loss payee on any such policy. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as a loss payee, we may obtain insurance to protect our interest in the Property. This insurance may include coverages not required of you. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.

**OBLIGATIONS INDEPENDENT:** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:
- A. You must pay this Contract even if someone else has also signed it.
- B. We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
- C. We may release any security and you will still be obligated to pay this Contract.
- D. If we give up any of our rights, it will not affect your duty to pay this Contract.
- E. If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**WARRANTY:** Warranty information is provided to you separately.

**WAIVER:** To the extent permitted by law, you agree to give up your rights to require us to do certain things. We are not required to: (1) demand payment of amounts due; (2) give notice that amounts due have not been paid, or have not been paid in the appropriate amount, time or manner; or, (3) give notice that we intend to make, or are making, this Contract immediately due.

---

**THIRD PARTY AGREEMENT**

By signing below you agree to give us a security interest in the Property described in the SALE section. You also agree to the terms of this Contract, including the WAIVER section above, except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend, change this Contract, or release any party or property without releasing you from this Contract. We may take these steps without notice or demand upon you.

You acknowledge receipt of a completed copy of this Contract.

Signature _____ Date _____

---

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

---

### ASSIGNMENT BY SELLER

Seller sells and assigns this Retail Installment Contract and Security Agreement, (Contract), to the Assignee, its successors and assigns, including all its rights, title and interest in this Contract, and any guarantee executed in connection with this Contract. Seller gives Assignee full power, either in its own name or in Seller's name, to take all legal or other actions which Seller could have taken under this Contract (SEPARATE AGREEMENT). If this Assignment is made "under the terms of a separate agreement" as indicated on page 1, the terms of this assignment are described in a separate writing(s) and not as provided below.) Seller warrants:

- A. This Contract represents a sale by Seller to Buyer on a time price basis and not on a cash basis.
- B. The statements contained in this Contract are true and correct.
- C. The down payment was made by the Buyer in the manner stated on page 1 of this Contract and, except for the application of any manufacturer's rebate, no part of the down payment was loaned or paid to the Buyer by Seller or Seller's representatives.
- D. This sale was completed in accordance with all applicable federal and state laws and regulations.
- E. This Contract is valid and enforceable in accordance with its terms.
- F. The names and signatures on this Contract are not forged, fictitious or assumed, and are true and correct.
- G. This Contract is vested in the Seller free of all liens, is not subject to any claims or defenses of the Buyer, and may be sold or assigned by the Seller.
- H. A completely filled-in copy of this Contract was delivered to the Buyer at the time of execution.
- I. The Goods have been delivered to the Buyer in good condition and have been accepted by Buyer.
- J. Seller has or will perfect a security interest in the Property in favor of the Assignee.

If any of these warranties is breached or untrue. Seller will, upon Assignee's demand, purchase this Contract from Assignee. The purchase shall be in cash in the amount of the unpaid balance (including finance charges) plus the costs and expenses of Assignee, including attorneys' fees.

Seller will indemnify Assignee for any loss sustained by it because of judicial set-off or as the result of a recovery made against Assignee as a result of a claim or defense Buyer has against Seller.

Seller waives notice of the acceptance of this Assignment, notice of non-payment or non-performance and notice of any other remedies available to Assignee.

Assignee may, without notice to Seller, and without affecting the liability of Seller under this Assignment, compound or release any rights against, and grant extensions of time for payment to be made, to Buyer and any other person obligated under this Contract.

UNLESS OTHERWISE INDICATED ON PAGE 1, THIS ASSIGNMENT IS WITHOUT RECOURSE.

WITH RECOURSE: If this Assignment is made "with recourse" as indicated on page 1, Assignee takes this Assignment with certain rights of recourse against Seller. Seller agrees that if the Buyer defaults on any obligation of payment or performance under the Contract, Seller will, upon demand, repurchase this Contract for the amount of the unpaid balance, including finance charges, due at that time.



3

## NOTICE OF TRANSFER AND RELEASE OF LIABILITY
MAIL THIS FORM TO DMV

TO PROPERLY RELEASE YOUR LIABILITY, PLEASE READ AND FOLLOW INSTRUCTIONS ON REVERSE SIDE
SECTIONS A-I MUST BE COMPLETED IN FULL　　PRINT IN CAPITAL LETTERS—USE BLACK OR BLUE INK

DMV MICROGRAPHICS USE ONLY

A. NEW OWNER'S LAST NAME (OR) COMPANY NAME　　FIRST
B. NEW OWNER'S ADDRESS　　APT NUMBER
C. CITY　　STATE　　ZIP CODE　　D. DATE OF SALE OR LEASE RETURN (MO DAY YR)
E. SELLER'S OR LESSEE'S LAST NAME (OR) COMPANY NAME　　FIRST　　F. SELLING PRICE (NO CENTS) WHOLE DOLLARS
G. SELLER'S OR LESSEE'S ADDRESS　　NATURE
I. CITY　　STATE

VESSEL HULL NUMBER: MBCNMEF41708　　2008 MASTERCRF　　CF 8360 RS

REG 138B (REV 10/2004)

---

### STATE OF CALIFORNIA
### CERTIFICATE OF OWNERSHIP
18008050116

VESSEL HULL NUMBER: MBCNMEF41708
YR MODEL: 2008　BUILDER: MASTERCRF　CF NUMBER: CF 8360 RS
VESSEL USE: PLEASURE　FUEL: G　FEES PAID: 619　REGISTRATION EXPIRATION DATE: 12/31/2009
VESSEL YR BUILT: 2007　LENGTH: 021 08　TYPE: R　MATL: P　PROP: I　DATE OF PURCHASE: 04/18/2008　CLASS: PL　V/O: PS　ISSUE DATE: 05/11/08

UNDOCUMENTED VESSEL

REGISTERED OWNER(S):
GILROY TITAN
12897 AUSTIN FOREST CIR
AUBURN CA 95602

I certify under penalty of perjury under the laws of the State of California, that THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VESSEL.

1a. ___ DATE ___ X ___ SIGNATURE OF REGISTERED OWNER
1b. ___ DATE ___ X ___ SIGNATURE OF REGISTERED OWNER

**IMPORTANT READ CAREFULLY**
Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S):
MEDALLION BK
1100 E 6600 SOUTH STE 510
SALT LAKE CITY
UT 84121

2. X ___ Signature releases interest in vessel (Company names must be countersigned)
Release Date ___

000412　BT02484997
REG 17.31 (REV. 10/03)

KEEP IN A SAFE PLACE · VOID IF ALTERED

EXHIBIT 2

4

**TO PROPERLY RELEASE YOUR LIABILITY, PLEASE READ AND FOLLOW INSTRUCTIONS ON REVERSE SIDE**
SECTIONS A-J MUST BE COMPLETED IN FULL — PRINT IN CAPITAL LETTERS — USE BLACK OR BLUE INK

**NOTICE OF TRANSFER AND RELEASE OF LIABILITY**
MAIL THIS FORM TO DMV

DMV MICROGRAPHICS USE ONLY

A. NEW OWNER'S LAST NAME (OR) COMPANY NAME / FIRST
B. NEW OWNER'S ADDRESS / APT NUMBER
C. ODOMETER READING (NO TENTHS)
D. CITY
E. DATE OF SALE OR LEASE RETURN (MO DAY YR)
F. SELLER'S OR LESSEE'S LAST NAME (OR) COMPANY NAME
G. SELLING PRICE (NO CENTS) WHOLE DOLLARS
H. SELLER'S OR LESSEE'S ADDRESS
I. SELLER'S OR LESSEE'S SIGNATURE X
J. CITY / STATE / ZIP CODE

VEHICLE ID NUMBER: 4FBBC212581018589
YR MODEL MAKE: 2008 SPTBT
PLATE NUMBER: 4KA1483

REG 138A (REV. 8/2007)

---

**STATE OF CALIFORNIA — CERTIFICATE OF TITLE**

18008042910

TRAILER
VEHICLE ID NUMBER: 4FBBC212581018589
YR MODEL: 2008  MAKE: SPTBT  PLATE NUMBER: 4KA1483
BODY TYPE MODEL: CARRIER
AX WEIGHT: 2  UNLADEN: 01150  FUEL: 0  TRANSFER DATE:  FEES PAID: 37  REGISTRATION EXPIRATION DATE: PERM
YR 1ST SOLD: 2008  CLASS: BK  YR:  MO: PS  EQUIPMENT/TRUST NUMBER:  ISSUE DATE: 05/09/08
MOTORCYCLE ENGINE NUMBER:   ODOMETER DATE:   ODOMETER READING:

REGISTERED OWNER(S):
GILROY TITAN
12897 AUSTIN FOREST CIR
AUBURN CA 95602

I certify (or declare) under penalty of perjury under the laws of the State of California that THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.

1a ____ X ____
DATE      SIGNATURE OF REGISTERED OWNER

1b ____ X ____
DATE      SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads [ ][ ][ ][ ][ ][ ] (no tenths) miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked.

WARNING  ☐ Odometer reading is not the actual mileage  ☐ Mileage exceeds the odometer mechanical limits.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

X ____    DATE ____    X ____

"IMPORTANT READ CAREFULLY"
Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S):
MEDALLION BK
1100 E 6600 SOUTH STE 510
SALT LAKE CITY
UT 84121

X ____
Signature releases interest in vehicle. (Company names must be countersigned)
Release Date ____

026015    CA110934968

REG 17.30RS (REV. 7/07)

**KEEP IN A SAFE PLACE - VOID IF ALTERED**

5

Value Report



### Vehicle Pricing & Information
NADAguides.com

8/5/2010

**Boats and Personal Watercraft**
**2008 MASTERCRAFT BOAT CO X SERIES X15**

| | | | | |
|---|---|---|---|---|
| Length: | 22' | | | |
| Model Name/Description: | X15 | Beam: | 8' 3" | |
| Boat Type: | VDR | Engine: | 1 | |
| Hull Material: | Fiberglass | | 310 HP Gasoline | |
| | | Net Weight: | 3575 | |

| | Low Retail | Average Retail |
|---|---|---|
| **Base Price** | $38,550 | $44,060 |
| **TOTAL PRICE** | **$38,550** | **$44,060** |

**Suggested List: $66,440**

Don't make a **$44,060** mistake, get a Boat History Report before you buy!

Notes

(*)INCLUDES THE VALUE OF THE OUTBOARD MOTOR. (**)INCLUDES THE VALUE OF A SINGLE AXLE TRAILER. (***)INCLUDES THE VALUE OF A TANDEM AXLE TRAILER. (****)INCLUDES THE VALUE OF THE OUTBOARD MOTOR AND SINGLE AXLE TRAILER — APPLY NOTE WITH * ONLY WHEN THERE IS AN ASTERISK(S) FOLLOWING THE MODEL NAME

**Value Explanations**

Prices shown are retail consumer values and to be considered as selling prices. Trade-in values are to be determined by local dealers and are generally lower than values shown.

**Suggested List** — We have included manufacturers' suggested retail pricing (MSRP) to assist in the financing, insuring and appraising of vessels. The MSRP is the manufacturers' and/or distributors' highest suggested retail price in the U.S.A. when the unit was new. The MSRP is furnished by the manufacturer and/or distributor and are assumed to be correct. Unless indicated, the MSRP does not include destination charges, dealer set-up, state or local taxes, license tags or insurance.

**Low Retail Value** — A low retail valued boat will show excessive wear and tear either cosmetically and/or mechanically. This boat may or may not be in running order. The buyer can expect to invest in cosmetic and/or mechanical work. Low retail vessels usually are not found on a dealer's lot. **Low Retail is not a trade-in value.**

**Average Retail Value** — An average retail valued boat should be in good condition with no visible damage or defects. This boat will show moderate wear and tear and will be in sound running condition. The buyer may need to invest in either minor cosmetic or mechanical work.

**Note:** Vessels in exceptional condition can be worth a significantly higher value than the Average Retail Price shown.

Back to Top ▲

©Copyright 2010 NADAguides.com. All Rights Reserved.

EXHIBIT 3